IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DEBBIE H. SALE, ) | Case No. 06-51290 |
| ) | |
| Debtor. ) | |
| _____ ) | |

**MEMORANDUM OPINION**

This matter came before the Court on April 13, 2007, upon a Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(2), or in the Alternative, Pursuant to 11 U.S.C. § 707(b)(3) (the "Motion to Dismiss"), filed by the United States Bankruptcy Administrator (the "Bankruptcy Administrator") on December 6, 2006.[1]  Thomas C. Flippin appeared on behalf of Debbie H. Sale (the "Debtor"), and Robin R. Whitman appeared on behalf of the Bankruptcy Administrator. After consideration of the Motion to Dismiss, the evidence presented at the hearing, the arguments of the parties, the entire official file, and the relevant law, the Court will grant the Motion to Dismiss.

**I. FACTS**

On September 26, 2006, the Debtor filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. The Debtor filed a Form B22A Statement of Current Monthly Income and Means Test Calculation with her petition. On November 27, 2006, the Debtor filed an amended Form B22A. On her Amended Form B22A, the Debtor reported current monthly income of

---

[1]At trial, the Bankruptcy Administrator withdrew the portion of his Motion to Dismiss that was based on Section 707(b)(3) of the Bankruptcy Code. This opinion only analyzes the Motion to Dismiss in the context of Section 707(b)(2).

1

$8,147.21 (line 12) and annualized income of $97,766.52 (line 13). The Debtor's household consists of four people, and the median family income for a family of four in North Carolina is $56,985.00 (line 14). After subtracting the allowed deductions, the Debtors report negative $385.73 of monthly disposable income under Section 707(b)(2) (line 50). The Debtor's 60-month disposable income is negative $23,143.80 ($385.73 x 60) (line 51), which does not exceed $10,000.00, and therefore a presumption of abuse does not arise under Section 707(b)(2).

The Debtor's marital adjustment on line 17 of her Form B22A (the "Marital Adjustment") totals $1,023.78. This amount includes $813.22 for payments of debts secured by three vehicles (the "Vehicles"), $176.56 for a loan payment, and $34.00 for life insurance and disability insurance payments. This amount (i.e., $1,023.78) is deducted from the paycheck of the Debtor's non-filing spouse (the "Spouse") before it is deposited into the joint account that the Debtor maintains with her Spouse. The Debtor's adjusted Current Monthly Income is $7,123.43 (line 18). On lines 23 and 24, the Debtor has taken deductions of $471.00 and $332.00, respectively, for two of the Vehicles pursuant to the IRS local Standards for transportation ownership/lease expenses (the "Transportation Ownership Expense").

At the Debtor's Section 341 meeting on October 27, 2006, the Debtor testified, and the parties have so stipulated, that although she took the Transportation Ownership Expense deductions for two of the Vehicles,[2] she did not own any of the Vehicles, all three Vehicles were titled in her Spouse's name, and she was not liable for any portion of the debt secured by the

---

[2]The parties have stipulated that the Debtor deducted $370.20 and $278.26, which are the monthly payments for the two Vehicles owned by the Spouse, on line 17 of the B22A Form as part of her Marital Adjustment, and that she also deducted $471.00 and $332.00 for the same two Vehicles on lines 23 and 24 as her Transportation Ownership Expense.

Vehicles. The Vehicles include a 2005 Kia Sedona van operated mainly by the Debtor, with a monthly payment of $278.26; a 1999 Ford F-250 truck mainly operated by the Spouse, with a monthly payment of $370.20; and a 1999 Kia Sportage mainly operated by the Debtor's daughter. There is currently no lien on the Kia Sportage.[3]

The Debtor and her Spouse maintain a joint account where both of their salaries are deposited. The expenses of the household are paid from the joint account. Expenses for gas, oil changes, and other maintenance on the Kia van and the Ford F-250 truck are paid out of the joint account. The Spouse uses the Ford F-250 truck for work and household purposes. The Debtor's daughter occasionally uses the Kia Sportage for household purposes, such as errands.

The Debtor testified that all of her debts are consumer debts.

The issues before the Court involve the Transportation Ownership Expense deduction, the Marital Adjustment, and Section 707(b)(2).[4] The Bankruptcy Administrator argues that when the income of the Spouse is taken into account and appropriate adjustments are made to the Debtor's expenses and deductions, the Debtor has disposable income that would provide for a meaningful distribution to her unsecured creditors. The Bankruptcy Administrator bases this argument on two facts. First, the Debtor takes an ownership deduction for the Kia Sedona and

---

[3] On the date of petition, $164.76 was paid each month on the debt secured by the Kia Sportage; this amount was deducted from the paycheck of the Debtor's Spouse before the Spouse's paycheck was deposited into their joint account. However, after the case was filed but before the hearing on this matter, the debt secured by the Kia Sportage was paid in full.

[4] In his complaint, the Bankruptcy Administrator also took issue with deductions that the Debtor took on lines 32, 25, 26, and 34 of her B22A form. At trial, the Bankruptcy Administrator withdrew those objections, explaining that if the Court allowed the Debtor to take the Marital Adjustment and the Transportation Ownership Expense deductions, then the Debtor would have negative disposable income regardless of whether the other deductions were allowed.

the Ford F-250 truck even though she does not own these Vehicles, is not liable for making the payments on them, and does not make payments on them.  Second, the Debtor deducts the payments on the Kia Sedona and the Ford F-250 truck as part of her Marital Adjustment on line 17 of her Form B22A <u>and</u> on the Transportation Ownership Expense on lines 23 and 24.  The Bankruptcy Administrator argues that this is a "double dip" by the Debtor.[5]

      The Debtor admits that allowing the deduction for the Vehicle expense in both the Marital Adjustment and the Transportation Ownership Expense portions of Form B22A could be characterized as double dipping, but she asserts that she did so only because there is no guidance as to what should be included in the Marital Adjustment.  The Debtor argues that if the Court disallowed the deduction for the vehicle payments in the Marital Adjustment, then the Vehicle Ownership Expense deduction should be allowed.  The Debtor bases this argument on the fact that on Form B22A the income of both the debtor and the non-filing spouse must be included.  It follows, the Debtor argues, that a debtor should be allowed to deduct for the expenses that her family actually experiences.  Further, the Debtor argues that the reasoning of this Court in <u>In re Enright</u>[6] should prevail in this case.  In <u>Enright</u>, this Court determined that ownership of a vehicle free and clear of all liens does not control whether a debtor can take the Transportation Ownership Expense on line 23 of the B22A Form.  <u>Id</u>. at *5-7.  The Debtor argues that the Court must look to the Debtor's actual expenses and use those to cap the deductions that the Debtor is

---

[5]The Bankruptcy Administrator does not object to the Debtor taking the Vehicle Operation Expense deduction of $343.00 on line 22 of her Form B22A.

[6]No. 06-10747, slip op. at *8 (Bankr. M.D.N.C. Mar. 6, 2007)(2007 WL 748432).

allowed to take. The Debtor cites Enright as support for her position,[7] reasoning that if only one spouse holds title to a vehicle but the other spouse contributes to the expenses associated with that vehicle, then ownership of the vehicle should not control as to whether the Transportation Ownership Expense is allowed.

## II. DISCUSSION

The Bankruptcy Administrator seeks dismissal of the Debtor's case pursuant to Section 707(b)(2)(A)(I) of the Bankruptcy Code, which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of-
>     (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or
>     (II) $10,000.

11 U.S.C. § 707(b)(2)(A)(I).

The moving party, in this case the Bankruptcy Administrator, has the burden of proving substantial abuse pursuant to Section 707. In re Hall, No. 06-71296, slip op. at *3 (Bankr. C. D. Ill. Feb. 12, 2007)(2007 WL 445517); In re Quarterman, 342 B.R. 647, 652 (Bankr. M.D. Fla. 2006)(citing In re Heath, 182 B.R. 557, 561 (9th Cir. BAP 1995)).

This case presents two related issues. First, may a debtor properly take the Transportation Ownership Expense on line 23 of the B22A Form where the vehicle is not owned by the debtor,

---

[7] In Enright, the debtor asserted that "the plain language of Section 707(b)(2)(A)(ii)(I) provides that she can take the ownership allowance if she owns a vehicle, irrespective of whether or not the vehicle is owned free of any liens." In re Enright, No. 06-10747, slip op. at *2 (Bankr. M.D.N.C. Mar. 6, 2007)(2007 WL 748432). The Court concluded that Section 707(b)(2)(A)(ii)(I) permits a debtor to take the Transportation Ownership Expense deduction on her vehicle even if it is not encumbered or leased. Id. at *8.

5

she is not obligated to make the payment on the vehicle, and she does not in fact make the payment?[8]  Second, may a debtor properly take the Transportation Ownership Expense for a vehicle where she also deducts the monthly payment on the vehicle by including it in the Marital Adjustment on line 17 for income not contributed by her non-filing spouse?

A.  The Transportation Ownership Expense

Several courts have addressed whether a debtor can deduct the Transportation Ownership Expense for a vehicle that she owns free and clear.  This Court finds the well-reasoned analysis in In re Sawdy, 362 B.R. 898, 902-903 (Bankr. E.D. Wis. 2007), to be the most persuasive.  The Sawdy court analyzed the cases that have examined the language of Section 707(b)(2)(A)(ii)(I) in the context of this issue and noted that half of them have allowed the deduction, while the other half have disallowed it.  Compare In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006)(refusing to allow debtor to deduct ownership cost); In re McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006) (same); In re Barraza, 346 B.R. 724 (Bankr. N.D. Tex. 2006)(same); In re Oliver, 350 B.R. 294, 301 (Bankr. W.D. Tex.2006)(same); In re Wiggs, No. 06-70203, Slip op at *3 (Bankr. N.D. Ill., August 4, 2006)(2006 WL 2246432)(same); In re Carlin, 348 B.R. 795 (Bankr. D. Or. 2006) (same); In re Harris, 353 B.R. 304 (Bankr. E.D. Okla.2006)(same) with In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006)(allowing debtor to deduct ownership cost); In re Wilson, 356 B.R. 114 (Bankr. D. Del. 2006)(same); In re Hartwick, 352 B.R. 867 (Bankr. D. Minn. 2006)(same); In re

---

[8]"There may someday arise a case in which an adventuresome debtor who has no vehicle titled in her name, is not liable on any vehicle note or lease, and does not make any vehicle note or lease payment attempts to deduct the vehicle ownership expense. At that time, some court will be forced to grapple with the question whose outlines are discernable in Demonica and Fowler-- the question of whether the language of § 707(b)(2)(A)(ii)(I) can be interpreted to create a flat vehicle ownership deduction for all above-median-income debtors--period." In re Sawdy, 362 B.R. 898, 910 (Bankr. E.D. Wis. 2007).

Haley, 354 B.R. 340 (Bankr. D.N.H. 2006)(same); In re Grunert, 353 B.R. 591 (Bankr. E.D. Wis. 2006)(same); and In re Prince, No. 06-10328, slip op. at *2 (Bankr. M.D.N.C. 2006)(2006 WL 3501281)(same); see also In re Swan, 368 B.R. 12 (Bankr. N.D. Cal. 2007); In re Ragle, No. 06-30208, slip op. at *3 (Bankr. E.D. Ky. Mar. 23, 2007)(2007 WL 1119632)(concurring with Sawdy); In re Talmadge, 371 B.R. 96, (Bankr. M.D. Pa. 2007)(disagreeing with Sawdy) .  The conclusions reached by these courts, being divided, are not helpful, but the reasoning behind their decisions is instructive.

Although all of the courts that have addressed this issue have relied upon the "plain meaning" doctrine to support their conclusions, they are evenly divided on what that meaning is. Sawdy, 362 B.R. at 903-904.  The Sawdy court concluded that "the `plain meaning' rule is not particularly helpful in analyzing the statutory language at issue." Id. at 905-906.[9]  The Sawdy

---

[9]"Is the meaning of [§ 707(b)(2)(A)(ii)(I)] so plain, so clear, so unambiguous, that the Court need look no further to determine its meaning?  The question seems ironic in light of the status of the case law.  If the language of § 707(b)(2)(A)(ii)(I), when given its ordinary and literal meaning, is plain, clear and unambiguous, then how could six courts have interpreted it one way and five courts have interpreted it in exactly the opposite way? Doesn't the concept of `plain' meaning carry with it the implication that the same meaning would be `plain'--ordinary, literal and obvious--to every reader?"  Sawdy, 362 B.R. at 904.

court also concluded that the unfair results rationale[10] and the policy rationale[11] were similarly unhelpful.

This Court finds the ownership/liability distinction, also discussed by Sawdy, to be helpful in determining whether to allow the Debtor to take the Transportation Ownership Expense in this case. The McGuire court disallowed the Transportation Ownership Expense because the debtor was "not incurring expenses for the purchase or lease of a vehicle," In re McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006), which the Fowler court interpreted to mean that a debtor could not claim the Transportation Ownership Expense unless the debtor was liable on the note, In re Fowler, 349 B.R. 414, 420 (Bankr. D. Del. 2006). Sawdy, 362 B.R. at 908. Fowler rejected this interpretation and concluded that owning a vehicle was not the same thing as being liable on the vehicle note. Fowler, 349 B.R. at 420. Relying on In re Demonica,

---

[10]When trying to determine the amount of disposable income that a debtor has available to pay creditors, some courts conclude that it is only fair that the debtor be allowed to reduce that available income by using his actual expenses. Other courts conclude that to read the statute to allow the deduction only for those debtors who had an actual car payment would allow a debtor who had any car payment (even $1) to take the full Local Standards deduction of $471.00 but would not allow a debtor who had no car payment to take the deduction. A subset of this last argument is that, although debtors who own vehicles free and clear do not have payments, they have owned their vehicles a long time and therefore their vehicles are older and are more likely to require repairs, so they should be allowed to take the deduction to allow for future repairs. Sawdy, 362 B.R. at 906-908.

[11]The Fowler court identified a policy for allowing above-median income debtors to claim the Transportation Ownership Expense: Congress intended an easily applied formula for determining when a court should presume that a debtor is abusing the system by filing a Chapter 7 petition. By referencing Local and National Standards, Congress intended courts to use a chart of standard expenses for all debtors that can be easily and uniformly applied, which avoids litigation. Fowler, 349 B.R. at 420-21. However, another policy behind BAPCPA, found in the legislative history and stated by President George W. Bush, is to "ensure that debtors make a good faith effort to repay" unsecured creditors "as much as they can afford." Sawdy, 362 B.R. at 910-11.

8

345 B.R. 895, 902 (Bankr. N.D. Ill. 2006), the Fowler court concluded a debtor who owned a vehicle but owed no payments on it could take the Transportation Ownership Expense.  For it's part, the Demonica court concluded that a debtor who did not own a vehicle but nonetheless made the vehicle payments could also take the Transportation Ownership Expense.  Id. at 905.

In this case, the Vehicles are not owned by the Debtor, she is not obligated to make the payments on the Vehicles, and she does not in fact make the payments.  There is no basis upon which to find that the Debtor is the owner of these Vehicles or is financially impacted by them.[12]  Therefore, the Debtor cannot take the Transportation Ownership Expense.  The Debtor improperly deducted the Transportation Ownership Expenses of $471.00 and $332.00 on lines 23 and 24 of her B22A Form.  In re Shahan, No. 06-11638, slip op. at *3 (Bankr. D. Kan. April 23, 2007)(2007 WL 1192507)(where payments on a debt secured by a vehicle are not the debtor's obligations, but are the sole obligations of the non-filing spouse, it is not proper for the debtor to claim a Transportation Ownership Expense deduction for such payments).

B. The Marital Adjustment

To interpret the Marital Adjustment on line 17 of the B22C Form, it is helpful to first examine the definition of "current monthly income."  Section 101(10A) defines "current monthly income" to include the income of the debtor from all sources and to exclude the income of the debtor's spouse except in a joint case.[13]  It follows that

---

[12] In re Enright, No. 06-10747, slip op. at *8 (Bankr. M.D.N.C. 2007)(2007 WL 748432), is distinguishable because the debtor in Enright had title to the vehicle in question.  In this case, the Spouse, who owned the Vehicles, did not file bankruptcy.

[13] There is an exception to the exception in Section 101(10A)(B), not applicable here, for amounts regularly paid by an entity other than the debtor for the household expenses of a spouse who is a dependent of the debtor, when the case is not a joint case

> in a single case, a debtor's spouse's income shall be included in the debtor's current monthly income to the extent that it is paid 'on a regular basis for the household expenses of the debtor or the debtor's dependents.' Thus, based upon the explicit language of section 101(10A), current monthly income does not include all the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income.

In re Quarterman, 342 B.R. 647, 650-51 (Bankr. M.D. Fla. 2006); see also In re Baldino, No. 07-50195, slip op. at *2 (Bankr. M.D. Pa. June 14, 2007)(2007 WL 1705634)(definition of "current monthly income" excludes income of non-filing spouse if it is not devoted to household expenses); In re Hall, No. 06-71296, slip op. at *3 (Bankr. C. D. Ill. Feb. 12, 2007)(2007 WL 445517)(same); In re Travis, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006)(same); and In re Lightsey, No. 06-40896, slip op. at *2 (Bankr. S.D. Ga. Jul. 26, 2007)(2007 WL 2363025) (same).

The "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor or the debtor's dependents is necessarily fact specific and subject to interpretation." In re Travis, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006). In Shahan, slip op. at *1, the Chapter 13 trustee objected to the confirmation of the debtor's plan because of certain deductions and adjustments taken on the debtor's Form B22C.[14] The debtor was married, but was filing individually. Id. The debtor reported the non-filing spouse's income on Form B22C, but claimed a marital adjustment of $706.19 for amounts withheld from the paycheck of the non-filing spouses. Id. The debtor deducted the $885.18 per month payments made by his

---

[14]Although Shahan discusses Form B22C, which is used in a Chapter 13 case, Form B22A, which is used in a Chapter 7 case, is not materially different.

non-filing spouse on debt secured by her vehicle and home.[15]  Id. at *2.  The debtor owed approximately $33,000 to unsecured creditors pursuant to his schedules, and included in these unsecured claims were claims related to a vehicle and homestead owned solely by his non-filing spouse.  Id.

The non-filing spouse testified that the amount of the Marital Adjustment represented her withholding from her paycheck for payroll taxes, social security, and a cafeteria plan contribution.  Id. at *3.  The Shahan court found that the amount of the withholding from the paycheck of the non-filing spouse was "not dedicated to household expense" and was justifiably deducted as a marital adjustment.  Id.

The trustee in Shahan questioned the debtor's deduction of future payments to be made on secured debts on line 47 of Form B22C.  Id.  The deductions related to debts secured by collateral--a house inhabited by the debtor and his non-filing spouse and the vehicle of the non-filing spouse--to which the debtor was not a titled owner.  Id.  The court found that future secured debt payments by a non-filing spouse are not deductible on line 47 of Form B22C based on the language of Section 707(b)(2).  Id.  Further, the debtor testified that he had no interest in the vehicle of his non-filing spouse, yet took the ownership expense.  The court found that the debtor could not rightfully take the Ownership Expense deduction on line 29 of Form B22C because the "deduction is available under 707(b)(2)(A)(ii)(I) for the 'debtor's applicable monthly expense amounts . . . for the debtor . . . and the spouse of the debtor in a joint case.'  This simply

---

[15]The debtor also claimed a deduction of $415.00, consisting of $100.00 for the recreation and miscellaneous personal expenses of his non-filing spouse, $100.00 for loan repayments to family members by his non-filing spouse, $15.00 for tax preparation, and $200.00 for monthly assistance by his non-filing spouse to her college-aged daughter.

does not apply to the non-filing spouse." Id. However, the court stated that "the non-filing spouse's car and house payments on debts not secured by assets of the estate or that are not claims against the debtor are not in fact amounts paid on a regular basis for household expenses as referenced in §101(10A) and, therefore, are deductible on Line 19 as a marital adjustment." Id.

In Travis, 353 B.R. at 523, the court considered a motion to dismiss by the United States Trustee (the "UST"). The debtor's schedules showed his net income to be $2,456 and the net income of his non-filing spouse to be $2,310, totaling $4,766. Id. at 522. The debtor included a marital adjustment of $2,616 on line 17 of Form B22A. Id. The total scheduled unsecured debt was approximately $29,000. Id. at 532. The UST disagreed with the debtor's marital adjustment and argued that "the [d]ebtor's spouse cannot include in this figure any amounts for food, utilities, clothing and personal items because those expenses are already accounted for on the B-22 Form when [d]ebtor calculated his deductions for food, clothing, utilities, housing and personal items (lines 19, 20A, 20B, and 21) based on a household consisting of five (5) members." Id. The UST argued that "it would be double dipping to allow [d]ebtor's non-filing spouse to also deduct her contribution to the expenses as a marital adjustment." Id. The total amount of expenses for food, clothing, utilities, housing and personal items included in the marital adjustment was $870. Id. at 524.

The Travis court noted that "because of the impact of the Line 17 marital adjustment calculation on a debtor's ability to remain in bankruptcy, courts have an obligation to scrutinize challenges to line 17 very carefully." Id. at 527. The court agreed that the expenses of the non-filing spouse for food and utilities are contributions to the household expenses of the debtor and

the debtor's dependents and, therefore, should not be included in the marital adjustment. Id. However, the court held that the expenses of the non-filing spouse for clothing and personal items did not have to excluded from the marital adjustment because Form B22A distinguishes between the expenses of the debtor and the expenses of the non-filing spouse that may be deducted prior to the calculation of the debtor's current monthly income. Id. The court held that the non-filing spouse's expenses on line 17 are not a fixed amount and if the non-filing spouse spends his or her income on his or her own expenses, then those are legitimate deductions on line 17, regardless of whether those expenses could also be generally categorized as household expenses. Id.

In this case, the Debtor's marital adjustment on the date of petition consisted of $813.22 for payments of debts secured by the Vehicles,[16] $176.56 for a loan payment, and $34.00 for life insurance and disability insurance payments. These amounts were deducted from the paycheck of the Spouse before it was deposited into the joint account that the Debtor maintains with her Spouse. The Vehicle payments are made by the Spouse on debts that are not secured by assets of the estate and that are not claims against the Debtor, so they are not amounts paid on a regular basis for household expenses. Thus, such payments are deductible on Line 17 as a marital adjustment. The loan payment and the insurance payments made by the Spouse are likewise not

---

[16] After the Debtor's case was filed but before the hearing on this matter, the debt secured by the Kia Sportage was paid in full, so the $164.76 monthly payment on that Vehicle is no longer deducted from the Spouse's paycheck. For purposes of a motion to dismiss a Chapter 7 case based on Section 707(b)(2), the relevant date on which calculations should be based is the date of the filing of the petition. In re Zak, 361 B.R. 481, 485 (Bankr. N.D. Ohio 2007); In re Nockerts, 357 B.R. 497, 500-01 (Bankr. E.D. Wis. 2006); In re Walker, No. 05-15010, slip op. at *4 (Bankr. N.D. Ga. 2006)(2006 WL 1314125); contra In re Singletary, 354 B.R. 455, 458, 468 (Bankr. S.D. Tex. 2006)(following In re Cortez, 457 F. 3d 448, 455 (5th Cir. 2006), a pre-BAPCPA case). Thus, the marital deduction does not need to be adjusted.

paid on a regular basis for household expenses, so they are also deductible on Line 17 as a marital adjustment.

### III. CONCLUSION

As set forth above, the Debtor is not entitled to the Transportation Ownership Expenses of $471.00 and $332.00 on lines 23 and 24 of her B22A Form.  However, the Debtor is entitled to take her Marital Adjustment of $1,023.78.  As a consequence, the Debtor has $412.27 of monthly disposable income under Section 707(b)(2).  The Debtor's 60-month disposable income is $25,036.20 ($412.27 X 60), which exceeds $10,000.00, and therefore a presumption of abuse arises under Section 707(b)(2).  For the foregoing reasons, the Motion to Dismiss will be granted.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

## **PARTIES IN INTEREST**

Debbie H. Sale

Thomas C. Flippin

Edwin H. Ferguson, Jr.

Kathryn L. Bringle

Michael D. West